IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON D. HARRIS,

                Plaintiff,

    v.                                                         OPINION and ORDER

JOSHUA MASON, JIMMY MUTCHIE,                    17-cv-570-jdp
and JAMES WEDDIG,[1]

                Defendants.

---

Pro se plaintiff Brandon Harris, a Wisconsin prisoner incarcerated at Stanley Correctional Institution, brings Eighth Amendment deliberate indifference claims against correctional officers at his previous prison, Waupun Correctional Institution (WCI). Harris has sickle-cell disease and, while at WCI, he suffered from "a sickle-cell crisis," an acute episode of pain caused by the disease. He alleges that defendants Joshua Mason, Jimmy Mutchie, and James Weddig waited an hour and a half before seeking medical treatment for him, and that this delay unnecessarily prolonged his pain.

Both parties have filed motions for summary judgment. Dkt. 22 and Dkt. 28. I will deny Harris's motion, and I will grant defendants' motion in part. I will grant summary judgment for defendants on Harris's claims against Mutchie and Weddig. Because Harris has not produced any evidence showing that these defendants were aware of the seriousness of his condition, no reasonable jury could conclude that their delay in providing treatment was the result of deliberate indifference. But Harris's claim against Mason survives summary judgment:

---

[1] I have updated the caption to reflect the correct spelling and full names of the defendants.

there is a genuine dispute regarding whether Mason purposely ignored Harris's medical needs, or whether he believed that Mutchie and Weddig were attending to them. So Harris's claim against Mason will need to be resolved at trial.

Also before me are Harris's motion for assistance in recruiting counsel, Dkt. 19, and defendants' motion to stay, Dkt. 45. I will deny both motions. I am not persuaded that Harris will be unable to try the case himself. And as for defendants' motion to stay, defendants contend that I should strike the trial date because a trial will be unnecessary if I grant summary judgment. Because I am granting defendants' motion for summary judgment only in part, trial will proceed as scheduled on April 8.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

At all times relevant to this suit, Harris was housed in the restricted housing unit at WCI. Every cell in that unit has an intercom that can be used to contact the officer on duty in the unit's control center. The intercom is supposed to be used for emergency calls only. The officer in the control center cannot leave his post, but he can answer inmate calls and notify other staff to respond if there is an emergency.

Harris suffers from sickle-cell disease, an inherited blood disorder that causes him to have abnormal hemoglobin and misshapen red-blood cells.[2] These misshapen blood cells can get stuck and block blood flow, decreasing oxygen delivery and triggering a "sickle-cell crisis."

---

[2] *See* Sickle Cell Disease, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health-topics/sickle-cell-disease (last visited Feb. 25, 2019).

A sickle-cell crisis causes intense pain for the sufferer. It can occur without warning, almost anywhere in the body.

On the morning of April 18, 2017, Harris had a sickle-cell crisis and used his intercom to call defendant Joshua Mason in the control center. The parties dispute the details of the call. Harris says that he called before 11:15 a.m., Dkt. 25, at ¶¶ 20–24, and told Mason that he was suffering from dizzy spells, fatigue, and pain in his lower back, legs, abdomen, and chest. Dkt. 1, at 2–3. Defendants say that Harris called at 11:25 a.m., Dkt. 14, ¶ 14, and told Mason that he was having a medical emergency but never elaborated. Dkt. 36-2, ¶ 4. In either case, it is undisputed that when Mason answered Harris's call, he could see via a hall camera that defendant officers Jimmy Mutchie and James Weddig were standing outside of Harris's cell. As Harris began speaking into the intercom, Mason told him to speak with Mutchie and Weddig instead.

Mutchie and Weddig were passing out medication when Harris called for help. They had a brief conversation with Harris through his cell door. The parties dispute whether Harris specifically said he was "having a medical emergency," Dkt. 37, ¶¶ 35, 38, but they agree that Harris told them that he was in "pain due to a medical condition." Dkt. 43, ¶ 19. Harris did not tell them that he had sickle-cell disease, or that he was suffering from a sickle-cell crisis. Mutchie and Weddig are trained to recognize certain life-threatening medical conditions, including signs of a heart attack, stroke, or difficulty breathing. When they talked to Harris, Harris did not exhibit any of these signs.[3]

---

[3] Harris objects that Mutchie and Weddig's opinions about his symptoms are inadmissible under Federal Rule of Evidence 701 because neither defendant is an expert. Dkt. 43, ¶ 20. But neither defendant is giving an opinion about Harris's condition; they are saying only that Harris did not have symptoms that they were trained to recognize. That testimony is based on their

3

Mutchie told Harris that he and Weddig would notify the health services unit (HSU) after they finished distributing medication.[4] Mutchie and Weddig left, finished passing out medication, and contacted HSU. Neither party says how long it took Mutchie and Weddig to distribute medication, or what time they contacted HSU.

After Mutchie and Weddig left, Harris tried to call Mason again, but Mason stopped answering the intercom. Neither party says how many times Harris tried to call Mason, and Mason does not remember. Dkt. 36-2, ¶ 3. Although Mason was required to keep a log of intercom calls, he did not record entries for any of Harris's calls.[5] Dkt. 40-1.

Harris says that he also asked other inmates to call Mason on his behalf. Dkt. 43, ¶ 14 and Dkt. 1-2, at 2–3. In particular, Devon Love, an inmate housed in a nearby cell, used his intercom to call Mason at 12:05 and tell Mason that Harris needed medical attention. Harris alleges that Mason told Love, "I don't give a fuck and have a nice day." *Id.*

At 12:45, a nurse arrived at the restricted housing unit and examined Harris. She gave him ibuprofen and water, and she contacted a prison doctor. The doctor ordered additional treatment, including blood tests. At 2:10 p.m., Harris was sent to the emergency room at Waupun Memorial Hospital.

---

personal experience, and they do not need to be experts to give it.

[4] The parties dispute the exact wording of Mutchie's statement to Harris, Dkt. 37, ¶ 39, but they agree that Mutchie did not seek medical help until after he finished the medication pass.

[5] Harris contends that there is a discrepancy between this call log and the unit log that defendants submitted during summary judgment. *Compare* Dkt. 40-1 and Dkt. 40-2. He says that this is evidence that defendants are "trying to pull the wool over the eyes of this court." Dkt. 40, at 6. But these appear to be two separate logs kept for different purposes (a log of emergency intercom calls and a log of officer actions within the restricted housing unit). Although Mason failed to record Harris's calls in the call log, there is no evidence that these logs were intentionally deceitful.

At the hospital, Harris was diagnosed with a sickle-cell crisis. The doctor who conducted Harris's intake determined that Harris "would need at least 2-3 days of intravenous (IV) pain medication given the severity of his symptoms." Dkt. 1-3. Harris remained hospitalized for the next three days and was given morphine to relieve the pain.

ANALYSIS

**A. Motions for summary judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, I must consider the burden of proof each party would bear on an issue at trial, and then require the party with the burden to produce evidence showing that they have proven that issue; if the party fails to provide evidence in support of a particular issue that they must prove at trial, I may enter summary judgment against that party. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

Harris contends that defendants were deliberately indifferent to his sickle-cell crisis, in violation of the Eighth Amendment. To succeed on this claim, Harris must prove that (1) he had a serious medical need; and (2) defendants were aware of that need and deliberately indifferent to it. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). Defendants do not challenge that Harris's sickle-cell crisis was a serious medical need. (He spent three days in the hospital.) So the only issue is whether each defendant was aware of Harris's condition and deliberately indifferent to it.

Harris contends that defendants were deliberately indifferent because under the prison's policies regarding medical emergencies and use of the intercom system, defendants were required to provide treatment as soon as he told them that he had a "medical emergency." But even if defendants violated prison policy, that does not necessarily mean that they violated the Eighth Amendment. The constitution sets the bare minimum standard that prison officials are required to follow; DOC regulations and state rules may (and often will) create higher standards. So the violation of state rules or statutes does not itself amount to a constitutional claim. *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004), *as amended* (June 4, 2004).

A defendant is deliberately indifferent, in violation of the Eighth Amendment, when he "knows of and disregards an excessive risk to inmate health" or is "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (quoting *Farmer v. Brennen*, 511 U.S. 825, 836 (1994)) (alterations omitted). Inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

With these standards in mind, I will consider Harris's claims against each defendant.

1. **Claims against Mutchie and Weddig**

Harris says that Mutchie and Weddig were deliberately indifferent to his sickle-cell crisis because they finished passing out medication instead of contacting HSU immediately. This caused Harris to wait about an hour and a half for treatment.

"A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015)). But not every delay in

treatment violates the constitution. "Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (collecting cases).

Harris concedes that he did not tell Mutchie and Weddig that he was suffering from a sickle-cell crisis, but he contends that they were nonetheless aware that his pain was a medical emergency because he specifically used the words, "medical emergency." But even if that is true, defendants were not required to take Harris's statement at face value. An officer who is skeptical of an inmate's complaints about pain does not violate the Eighth Amendment, because "[t]he Constitution does not oblige guards to believe whatever inmates say." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (quoting *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir.2004)). Harris is correct that he need not prove that defendants were aware of his sickle-cell disease in particular. But he still has the burden to show that that, at a minimum, defendants were aware of facts that would allow them to infer that he had *some* serious medical need requiring immediate attention.

Even viewing the record in the light most favorable to Harris, he cannot meet that burden. It is undisputed that Mutchie and Weddig were unaware that Harris had sickle-cell disease or was suffering from a sickle-cell crisis. And it is undisputed that Mutchie and Weddig were trained to recognize the signs of certain life-threatening medical conditions, and that Harris did not exhibit those signs. Harris says that he told them that he was in pain due to a medical condition and it was an "emergency." But he does not allege that he told them about the severity of his pain or elaborated at all about what he was experiencing. In sum, the

summary judgment evidence shows that Mutchie and Weddig knew only that Harris suffered from some type of pain.

Under those circumstances, Mutchie and Weddig's decision to contact HSU after they finished distributing medication was reasonable. No reasonable jury could find that this relatively short delay constituted deliberate indifference. And the court of appeals has affirmed summary judgment in similar cases where a plaintiff experienced a short delay after complaining of pain and no other symptoms. *See e.g. Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (two-and-a-half-hour delay in treatment after inmate complained of pain from torn rotator cuff did not violate constitution when there was no evidence that the delay was caused by willful ignorance or malice on behalf of defendants); *Harrison v. Wexford Health Sources, Inc.*, 669 F. App'x 797, 799 (7th Cir. 2016) (inmate's fall from high window caused pain but was not a medical emergency requiring immediate treatment). I will grant summary judgment for defendants on Harris's claims against Mutchie and Weddig.

### 2. Claim against Mason

Unlike Harris's claims against Mutchie and Weddig, Harris has presented evidence that would allow a jury to conclude that Mason was aware of the seriousness of his medical need and chose to ignore it.

Defendants say that that Mason is entitled to summary judgment because, when Harris called, Mason directed Harris to speak with Mutchie and Weddig. But the dispute that precludes summary judgment in this case regards what Mason did next. After Harris was done talking to Mutchie, he tried to call Mason several times, but Mason refused to answer the intercom. Harris also alleges that when he couldn't contact Mason, he asked Devon Love to call Mason on his behalf, and that Mason told Love "I don't give a fuck."

8

Defendants object that Mason's statements to Love are inadmissible hearsay because Harris does not provide an affidavit from Love. Dkt. 43, ¶ 14. But Harris is allowed to present evidence on summary judgment that might not be in the proper form, but that could be brought in the proper form at trial. Fed. R. Civ. P. 56(c)(2); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014), *reh'g denied* ("We note that the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." (emphasis in original)). Because Harris is pro se, I will give him some leeway in his summary judgment presentation, and I'll infer that Harris could call Love to testify about Mason's statements at trial. And even if Love did not testify, a reasonable jury could still infer that, due to Harris's repeated calls, Mason was aware of Harris's serious medical need and that Harris was waiting for someone to contact HSU.

Defendants contend that Harris must provide "verifying medical evidence" that the delay (rather than the underlying condition) caused him harm. But this does not mean that Harris needs to prove that the delay made his sickle-cell crisis worse or prolonged the length of his hospital visit. As the court of appeals explained in *Williams v. Liefer*, 491 F.3d 710, 716–17 (7th Cir. 2007), a delay causes harm if it causes the plaintiff to endure pain while waiting for treatment. And the medical records that Harris provides—which show that Harris needed morphine to relieve his pain—are sufficient for a jury to conclude that he was in significant pain while waiting for treatment. *Id.*; *Lewis*, 864 F.3d at 564. So a jury could find that Mason's refusal to answer the intercom, or ensure that someone notified HSU, violated the Eighth Amendment.

But a reasonable jury could also conclude, as defendants contend, that Mason believed Mutchie and Weddig were handling the issue. In that case, Mason's refusal to answer Harris's

9

calls would not reflect deliberate indifference. Because this is a dispute that needs to be resolved at trial, I will deny both parties' motions for summary judgment.[6]

**B. Motion for assistance in recruiting counsel**

Harris moves for assistance in recruiting counsel. Dkt. 19. Under 28 U.S.C. § 1915(e)(1), I can assist in recruiting counsel for pro se plaintiffs. *See Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). But almost all of this court's pro se litigants would benefit from the assistance of counsel, and there are not enough lawyers willing to take these types of cases to give each plaintiff one. I must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

To prove that assistance in recruiting counsel is necessary, this court generally requires that pro se plaintiffs: (1) provide the names and addresses of at least three lawyers who decline to represent them in the case; and (2) demonstrate that theirs is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds their demonstrated ability to prosecute it. *Pruitt.* 503 F.3d at 655; *see also Young v. Cramer*, No. 13-cv-77, 2013 WL 5504480, at *2 (W.D. Wis. Oct. 3, 2013). Harris satisfies the first requirement because he has submitted letters from three lawyers who declined to represent

---

[6] Defendants also raise a qualified immunity defense, but it is clearly established that prison officials cannot act with deliberate indifference toward treatment of inmates' medical needs. If Mason was aware that Harris had a medical condition that required immediate attention, but ignored it, then his actions would fall under clearly established law regarding deliberate indifference. *See e.g. Lewis*, 864 F.3d 556.

him. But Harris fails the second requirement because he has not shown that this case will be too complex for him to handle.

He says that he cannot litigate the case because he has limited legal knowledge, he has thus far relied on a jailhouse lawyer, and the case involves medical issues. But a lack of legal knowledge is unfortunately common among pro se prisoner litigants. It is not in itself a reason to recruit counsel. And although the case involves medical issues, it likely will not hinge on medical issues. Harris may use his medical records to show that he has sickle-cell disease, and the records of his emergency room visit (along with Harris's personal recollection of the visit) will be sufficient to prove to a jury that he suffered from a serious medical need.

The dispute at the center of this case is whether Mason adequately responded to Harris's requests for medical assistance. Harris does not need to make complicated legal arguments or provide a medical expert to show that Mason ignored him. He simply needs to tell his side of the story. He can do this by testifying about what happened and calling witnesses who also talked with Mason or observed what happened.

So I will deny Harris's motion for assistance in recruiting counsel. Harris will receive a trial preparation order that will explain how to prepare for trial, and what steps he should take next.

ORDER

IT IS ORDERED that:

1. Plaintiff Brandon Harris's motion for summary judgment, Dkt. 22, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 28, is GRANTED in part. The motion is granted as to Harris's claims against defendants Jimmy Mutchie and James Weddig. It is DENIED as to Harris's claim against Joshua Mason.

3. Defendants Jimmy Mutchie and James Weddig are DISMISSED from the case.

4. Plaintiff Brandon Harris's motion for assistance in recruiting counsel, Dkt. 16, is DENIED.

5. Defendants' motion to stay, Dkt. 45, is DENIED.

Entered February 28, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge